Pond's Extract Co. agt. Humphreys' Specific Homœopathic Co.

# SUPREME COURT.

The Pond's Extract Company agt. The Humphreys' Specific Homœopathic Company and Frederick Humphreys.

*Agreement, when not in restraint of trade — Injunction.*

The defendants, for a valuable consideration, covenanted with the plaintiff that they would not manufacture or sell a medicine, produced from the "Witch Hazel," by, among others, of either of the following names : "Pond's Extract," "Extract of Witch Hazel," "Humphreys' Pond Extract."

*Held,* under the facts and circumstances of this case, that the sale of the medicine thereafter, by the defendants, under the name of "Humphreys' Witch Hazel," was a violation of the covenant.

Also *held,* that, as the defendants were not restrained, absolutely, from making or selling a medicine produced from the shrub in question, but only from doing so under certain names, the covenant was not void as being in restraint of trade.

Also *held,* that the remedy by injunction was proper to restrain the defendants from a continued violation of the covenant.

*N. Y. Special Term, October,* 1875.

*Morris, Billings & Cardozo,* for plaintiff.

*William Sutphen & Ira Shafer,* for defendants.

Van Vorst, J.—The covenant of the corporation defendant and the defendant Humphreys individually with the plaintiff, contained in the bill of sale, dated the 6th day of December, 1872, was that they would not manufacture or sell the medicine described in the bill of sale by either of the following names : "Pond's Extract," "Pond's Extract of Hamamelis," "Extract of Hamamelis," "Extract of Witch,

Hazel," " Humphreys' Pond Extract." Under these names the medicine had been theretofore known and sold. The medicine is produced from the shrub known as " Witch Hazel" or " Hamamelis."

Pond was an early, if not its first manufacturer, and from that fact, his name had become identified with it. The defendant Humphreys says, in his work entitled " Homœopathic Mentor : " " Dr. Humphreys gave Pond his best ideas on the subject of its preparation, and for more than twenty years he has made the preparation and curative properties of this shrub the subject of his study, observation, and research. He has written nearly every thing about it, and has made its development and preparation the object of his special care, so that no man knows so much about it, or so well how to prepare it, as he."

Whatever rights Pond had, if any, or those to whom he conveyed the method of preparation of this medicine, and the trade marks, and property connected therewith, passed finally to the defendant corporation, through the defendant Humphreys and others, and at last to the corporation plaintiff.

I think it is quite unnecessary to determine whether or not there was any secret in the manufacture of the medicine. The process as disclosed by the evidence is simple. Nor is it important, in the view taken of the case, to discuss whether it involves the violation of " trade marks."

It appears that since the execution of the bill of sale, and the making of the covenant therein contained, the corporation defendant, and of which the defendant Humphreys is president, has offered for sale and sold, and continues to offer for sale and sell, a medicine produced from the shrub in question, " Witch Hazel," which is substantially the same as the article theretofore known under the name of " Pond's Extract," and the other names mentioned in the bill of sale.

The defendant corporation, and the defendant Humphreys, call the said article by the name of " *Humphreys' Witch Hazel.*"

Pond's Extract Co. agt. Humphreys' Specific Homœopathic Co.

It is claimed by the defendants that their article is better and stronger. But it is conceded that it has the same basis as " Pond's Extract." The defendants accompany the sale of their article with a manual descriptive of its curative qualities.

The same qualities had before been attributed by them to " Pond's Extract."

But what would seem clearly to establish the identity of the defendants' medicine, with that which by the covenant, they agreed neither to manufacture nor sell by certain names, is furnished by the defendants themselves. In the edition of " Humphreys' Homœopathic Mentor of 1872," Pond's Extract of Hamamelis finds conspicuous mention. Its application as a remedy for specific complaints is in many places in the book defined and recommended with great particularity.

A new edition of this work was published subsequent to the bill of sale, and in the year 1874. The new edition appears to be paged the same as the old.

In the new edition, on the pages in which " Pond's Extract" had appeared in the former edition as a specific remedy, the same is omitted, and " Witch Hazel " is inserted in its place, the same qualities being attributed to " Humphreys' Witch Hazel" as are conceded to " Pond's Extract."

The defendants offer " Humphreys' Witch Hazel " for sale from their depot on Broadway, long used by the corporation defendant for the sale of " Humphreys' Specifics " and " Pond's Extract," with which business the name of Dr. Humphreys was closely and profitably associated, and had been for many years.

Now, in construing the covenant, it cannot be held, nor do I understand it to be claimed by the plaintiff, that the defendants are absolutely restrained from manufacturing and selling any medicine produced from the shrub " witch hazel," by distillation or otherwise ; nor, in fact, from making and selling the specific medicine which they now produce. But the objection is, that the covenant operates to restrain them from the use of the name of " Humphreys' Witch Hazel " in

Pond's Extract Co. agt. Humphreys' Specific Homœopathic Co.

connection with the medicine.    I am inclined to the opinion that the defendants cannot use such name in that connection, and that such use is a violation of the covenant into which defendants entered with the plaintiff when they made the sale in December, 1872.

The defendants were called upon, in good faith, in virtue of the large consideration paid to them, honestly to observe the covenant in its true spirit.    Humphreys' name had been used in connection with "Pond's Extract."    That was publicly known.    His connection with it, and the great efforts he had personally made to bring the article into use, doubtless added to the large demand made for it as a medicine, and adds to the plaintiff's damages by the sale of the article known as "Humphreys' Witch Hazel."    Defendants were clearly under obligation, by the exact words of the covenant, not to make or sell the medicine under the name of "Humphreys' Pond Extract."    They were likewise under restraint, by force of the covenant, from selling under the name of "Extract of Witch Hazel."    The putting of the article on the market, under the name of "Humphreys' Witch Hazel," would seem to be a clear breach of the covenant.    No name or combination of words could have been adopted more likely to have damaged the plaintiff's preparation.    It suggests the shrub from which Pond obtained his medicine, and its genuineness confirmed by the association of the name of Dr. Humphreys therewith, a successor of Pond, and whose efforts in its behalf were well and publicly known.

The slight change made in placing "Humphreys'" name before "Witch Hazel," instead of "Pond's Extract," the medicine being in fact the same, is a palpable attempt to evade the spirit of the covenant.    But it should not succeed in a court of equity, which should hold the defendants to the conscientious observance of their agreement, in spirit and according to its true intent.

As the defendants are not restrained absolutely from making and selling a medicine produced from the shrub

in question, but only from doing so under certain names, I do not regard the agreement void, as being in restraint of trade.

It has already been held at special term, upon a full argument, that the remedy by injunction is a proper one in this action, and the injunction already issued has, upon consideration, been continued. The conclusion of the special term in this regard appears to be well founded. The injury is a continuing one, and repeated by every sale. An action for damages would prove an inadequate remedy, and the injunction will prevent a multiplicity of actions.

There should be judgment for the plaintiff for the relief asked, which is, in substance, a perpetual restraint.